IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :

BURMAN Y. MATHIS

                                    :

    v.                              :   Civil Action No. DKC 12-1777

                                    :

DAVID S. GOLDBERG, ET AL.

                                    :

## MEMORANDUM OPINION

Presently pending and ready for review in this breach of contract and fraud case are the motions to dismiss or for summary judgment filed by Defendants David Goldberg (ECF No. 5) and Stuart Skok (ECF No. 16).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motions will be granted.[1]

## I.   Background

### A.   Factual Background

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff Burman Mathis.  This action arises out of the arbitration proceedings to resolve Plaintiff's divorce.  Plaintiff and his wife retained Defendant David Goldberg as both mediator and arbitrator.

---

[1] Plaintiff also filed a motion to file a surreply.  (ECF No. 22).  Because he does not demonstrate a need for a surreply, that motion will be denied.

Plaintiff signed the arbitration agreement with Mr. Goldberg on the morning of July 9, 2009. Throughout the divorce and arbitration proceedings, Plaintiff was represented by counsel. The arbitration occurred on July 9, and Mr. Goldberg entered an arbitration award on July 24. During the arbitration proceedings, Defendant Skok, a local expert practitioner of family law, testified to the reasonableness of Plaintiff's wife's attorney's fees.

**1.  Background of Previous Proceedings**

After Mr. Goldberg filed the arbitration award with the Montgomery County Circuit Court ("Circuit Court"), Plaintiff moved to vacate it, filing three separate memoranda in support of his position:  (1) on August 12, 2009, a "Petition to Vacate Arbitrator's Opinion and award, and Motion to Relieve Plaintiff from Contractual Obligations"; (2) on August 28, a "Supplemental Motion with Points and Authorities in Support of Plaintiff's Motion to Hold Arbitration Agreement Unenforceable"; and, (3) also on August 28, a "Supplemental Petition with Points and Authorities in Support of Plaintiff's Petition to Vacate Arbitrator's Opinion and Award." The Circuit Court held a hearing on October 9, 2009 on Plaintiff's motions, rejected his arguments, and entered an order affirming the arbitration award. On December 11, 2009, Plaintiff and his wife entered into a consent order regarding payments to me made pursuant to the

arbitration award, including attorney's fees and child support payments.

Plaintiff filed a second petition to vacate the arbitration award on July 22, 2011.  The matter was heard in the Circuit Court, and Plaintiff and his wife entered into a second consent order regarding the arrears and ongoing monthly payments pursuant to the arbitration award.  The court issued an order affirming the terms of the agreement and dismissing Plaintiff's claims with prejudice.

### 2.   Background of Allegations

In Plaintiff's first petition to vacate and supplemental memoranda, Plaintiff argued that the arbitration agreement was invalid and that the circumstances surrounding the arbitration proceedings were improperly conducted. Specifically, he made a number of factual allegations:  (1) the arbitration agreement only established a limited universe of issues to be resolved, which Mr. Goldberg exceeded; (2) Mr. Goldberg acted prejudicially toward Plaintiff by considering surprise documents and witnesses; (3) Mr. Goldberg exceeded his jurisdiction by improperly considering evidence of attorney's fees connected to a Virginia criminal matter, which was outside the scope of the pending divorce trial and amounted to the unauthorized practice of law in Virginia; (4) Mr. Goldberg misstated and refused to identify legal authority for

overstepping the jurisdiction of the divorce proceeding and arbitration agreement; (5) Mr. Goldberg intentionally fabricated both fact and law in the arbitration award; and (6) the arbitration award clearly demonstrated Mr. Goldberg's partiality for Plaintiff's wife and intentionally mischaracterized Plaintiff's financial situation. (ECF No. 5-3)

Plaintiff therefore requested that the agreement be rescinded and the award be vacated under Md. Code Ann., Cts. & Jud. Proc. § 3-224 based on Mr. Goldberg's fraud, partiality, misconduct, violation of Plaintiff's due process rights, misstatement of law, breach of contract, and exceeding his jurisdiction.

In his second petition to vacate, Plaintiff expanded his factual allegations to include: (1) Mr. Goldberg improperly refused to record the arbitration proceedings; (2) he improperly refused to share his empirical and legal research with Plaintiff; (3) he improperly refused to correct misstatements of law; (4) Mr. Goldberg fraudulently included a waiver of Plaintiff's rights to subpoena his notes from the proceedings in the arbitration agreement; and (5) Mr. Goldberg improperly destroyed documents from the arbitration proceedings. (ECF No. 5-8).

## B.   Procedural Background

On June 15, 2012, Plaintiff filed a complaint against Defendant Goldberg.  (ECF No. 1).  Mr. Goldberg filed a motion to dismiss (ECF No. 5), which Plaintiff opposed and moved to strike (ECF No. 9).  Thereafter, Plaintiff moved for leave to, and filed, an amended complaint that added Ms. Skok as a defendant.  (ECF No. 15).  Ms. Skok moved to dismiss the amended complaint (ECF No. 16).  Plaintiff's motion to strike was denied (ECF No. 19), and he opposed Defendants' motions to dismiss on the merits (ECF Nos. 19 & 20).  Mr. Goldberg replied to Plaintiff's opposition (ECF No. 21), and Plaintiff moved to file a surreply (ECF No. 22), which Mr. Goldberg opposed (ECF No. 23).  Plaintiff replied to this opposition.  (ECF No. 24).

## II.  Standard of Review

Defendants have filed a motion to dismiss or for summary judgment based on a variety of grounds, one of which is an affirmative defense.  An affirmative defense may be raised by way of a motion to dismiss, but only when all the facts necessary to the affirmative defense "'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)(quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).  Here, the parties freely refer to material beyond the face of the complaint and, while it might be possible to consider evidence

that can be judicially noticed without converting the motion to one for summary judgment, the collateral estoppel issue will be considered under the summary judgment standard.

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).   Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the facts that are presented must be construed in the light most favorable to

the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

Other issues present a straightforward challenge to the sufficiency of the complaint Rule 12(b)(6). *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions

couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

Plaintiff's nineteen-count amended complaint asserts claims against Mr. Goldberg for:  (1) rescission based on mutual mistake of law in the arbitration contract (Count I); (2) rescission based on unilateral mistake of law in the arbitration contract (Count II; (3) four counts of fraud (Counts III, IV, VIII, and XIV); (4) two counts of promissory fraud (Counts VII and IX); (5) four counts of breach of contract (Counts V, VI, X, and XV); (6) two generic "intentional tort" counts (Counts XI and XII); (7) intentional infliction of emotional distress ("IIED"); (8) abuse of process (Count XIII); and (9) two § 1983 claims for violation of due process rights (Counts XVIII and XIX).  Against Ms. Skok, Plaintiff asserts one claim of fraud (Count XVII).  Broadly, Plaintiff's claims for mistake, due process, and certain of his fraud claims argue that the arbitration agreement should be rescinded, the award vacated, and additional damages awarded because Mr. Goldberg mistakenly and fraudulently induced Plaintiff to enter into a contract that misstates the law.  Plaintiff's remaining fraud, breach of contract, and due process claims allege that Mr. Goldberg and

8

Ms. Skok acted improperly and illegally during and after the arbitration proceeding, meriting vacation of the arbitration award and additional damages.

Defendants argue that (1) Plaintiff is collaterally estopped from bringing all of his claims, (2) Mr. Goldberg is entitled to judicial immunity, and (3) Plaintiff fails to state a claim upon which relief can be granted.

### A. Collateral Estoppel

Defendants maintain that Plaintiff is precluded, by the doctrine of defensive non-mutual collateral estoppel, from bringing his mistake, fraud, due process, and breach of contract claims because he has already received a full hearing before the Circuit Court on these issues in connection with his efforts to vacate the arbitration award. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action." *John Crane, Inc. v. Puller*, 169 Md.App. 1, 26 (2006) (citations omitted). Collateral estoppel is rooted in common law, and its scope is determined by the appropriate state law. *Housley v. Holquist*, No. 10-1881, 2012 WL 3239887, at *3 (D.Md. Aug. 3, 2012) (citing *Janes v. State*, 350 Md. 284 (1984)). While collateral estoppel traditionally requires mutuality of the parties, Maryland allows for the doctrine of defensive non-

mutual collateral estoppel, where "the defendant seeks to preclude the plaintiff from relitigating an issue that the plaintiff . . . previously litigated unsuccessfully in another action against one or more different parties." *Burruss v. Bd. Of Cnty. Comm'rs of Frederick Cnty.*, 427 Md. 231, 250 (2012).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, if a Maryland state court would preclude Plaintiff from bringing these claims based on the circuit court's rejection of his claims, he is similarly precluded here.

In Maryland, the defense of collateral estoppel depends on the answers to four questions:

> "(1) Was the issue decided on the prior adjudication identical with the one presented in the action in question?
> (2) Was there a final judgment on the merits?
> (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
> (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"

*Bryan v. State Farm Mut. Auto. Ins. Co.*, 205 Md.App. 587, 592 (2012) (quoting *Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371 (2000)). As an affirmative defense, Defendants bear the burden of proof to demonstrate that these elements are met.

10

Plaintiff disputes the first, second, and fourth elements, arguing that he didn't make all of the arguments raised in his complaint at the hearing before the Circuit Court, that there was never a final judgment on the merits, as he and his wife entered into a consent agreement after the circuit court entered its order, and that fairness requires that he be able to relitigate these issues.

### 1.   Issues Actually Litigated

Collateral estoppel requires that the issue was "actually litigated and determined" in the prior proceeding. *Janes,* 350 Md. at 295.   A claim may be collaterally estopped even if a plaintiff did not raise that particular legal theory in the prior proceeding.   "[T]he concern of collateral estoppel law is with the preclusion of duplicative fact-finding . . . [it] is concerned only coincidentally with what happened legally." *John Crane, Inc. v. Puller*, 169 Md.App. 1, 27-28 (2006) (quotations and citations omitted).   Thus, once a finding of fact has been made adversely to a party, that party may not relitigate that fact "even in the trial of a different case." *Id.* at 28.

The factual issues here and in Plaintiff's previous case are identical.   In both instances, he discusses the circumstances surrounding the execution of the arbitration agreement and the arbitrator's conduct during and after the arbitration proceedings.   As discussed above, Plaintiff's first

petition to vacate the arbitration award and rescind the arbitration contract characterize the facts at issue as: (1) whether Mr. Goldberg exceeded the scope of the arbitration agreement; (2) whether Mr. Goldberg acted in a highly prejudicial manner in favor of Plaintiff's wife by submitting and considering surprise documents and witnesses; (3) whether Mr. Goldberg acted outside the scope of his jurisdiction by considering attorney's fees arising from a Virginia criminal matter; (4) whether Mr. Goldberg was improperly evasive with respect to the law forming the basis of his authority; (5) whether Mr. Goldberg intentionally corrupted the process; and (6) the amount of attorney's fees awarded.[2]   (ECF No. 5-3). Plaintiff's first supplemental motion in support of the petition outlines the facts supporting his breach of contract theories, and attaches ten exhibits, including the arbitration agreement

---

[2] Counts VI, VII, and VIII address Mr. Goldberg's failures to produce notes from the arbitration proceedings and to submit to a deposition in connection with Plaintiff's second petition to vacate the arbitration agreement.   Specifically, Plaintiff alleges that Mr. Goldberg breached the terms of the arbitration contract that allowed for discovery from him to be taken if his conduct violated Md. Code Ann., Cts. & Jud. Proc. § 3-224, which allows the arbitration award to be vacated in instances of the arbitrator's fraud, prejudice, or exceeding jurisdiction.   Even though Mr. Goldberg's refusal to submit to discovery occurred in 2011, he did so on the basis that the circuit court explicitly ruled that his conduct in 2009 did not violate § 3-224. Therefore, the underlying facts relate back to Mr. Goldberg's conduct in 2009, which were addressed in the circuit court's ruling.   For the reasons discussed below, Plaintiff is therefore precluded from asserting these claims.

and award.    These same documents provide the basis of Plaintiff's amended complaint.   "When the subsequent litigation requires the presentation of identical evidence, then the doctrine of collateral estoppel may apply." *Housley v. Holquist*, No. 10-1881, 2012 WL 3239887, at * 4 (D.Md. Aug. 3, 2012) (applying Maryland law).

Even though Plaintiff offers new legal theories in support of recovery on some of his fraud, due process, and contract claims, he already presented the dispositive facts alleged in the Amended Complaint to the Circuit Court, and it found them to be adverse to Plaintiff's position.   After a hearing on Plaintiff's petition, the circuit judge refused to rescind the arbitral contract.   Further, he concluded that "there is no mutual mistake of fact.   There is no mutual mistake of law, there is no fraud in the inducement." (ECF No. 5-6, at 49).   In refusing to vacate or alter the arbitration award, the court concluded that there was "no congnizable evidence or other information that the arbitral [award] was procured by corruption, fraud or undue means as those terms have been judicially defined." (*Id.* at 51).   He further concluded that Mr. Goldberg did not act partially, miscalculate attorney's fees, or exceed his powers.

Because the facts alleged in support of these claims are identical to those previously decided by the Circuit Court,

Plaintiff cannot contend that the claims were not actually litigated.

### 2. Final Judgment

Maryland recently articulated the requirement of finality in the context of collateral estoppel: "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Bryan*, 205 Md.App. at 594 (quoting Restatement (Second) of Judgments § 13). The *Bryan* court further instructed that a court should consider whether the:

> decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

*Id.* at 596 (citing Restatement (Second) of Judgments § 13 Comment g). As Mr. Goldberg suggests, *Bryan* supports a broad application of the doctrine of collateral estoppel that precludes litigating issues that have already been subject to a sufficiently definite ruling.

The circuit court's October 9, 2009 ruling and order on Plaintiff's petitions to vacate the arbitration award are sufficiently definite to constitute a final judgment on the merits. The circuit court judge issued a ruling from the bench after considering Plaintiff's arguments. (ECF No. 5-6). The same day, he entered an order and judgment denying Plaintiff's request to vacate the arbitration agreement. (ECF No. 5-7). Plaintiff then filed an appeal of this judgment, which he later withdrew with prejudice. (ECF No. 20-5).[3]

Judgment was entered against Plaintiff on October 9, 2009, which he appealed and withdrew with prejudice. This judgment of the circuit court therefore serves as a final judgment on the merits.

### 3. Fairness

Finally, Plaintiff argues that his fragile health condition at the time surrounding his divorce merits allowing him to

---

[3] Plaintiff also contends that the consent orders that followed the October 9 order and Plaintiff's second petition to vacate the arbitration award do not constitute a final judgment, rendering an application of collateral estoppel inappropriate. Pursuant to the first consent agreement, Plaintiff withdrew his appeal of the circuit court's October order with prejudice. (ECF No. 20-5). Pursuant to the order entering the second consent agreement, Plaintiff's petition to vacate was dismissed with prejudice. (ECF No. 5-9). Even if the order hadn't been entered, in Maryland, a voluntary dismissal with prejudice constitutes a basis for collateral estoppel on the same and related claims. *Bryan*, 205 Md.App. at 603-04 (citing *Welsh v. Gerber Prods., Inc*., 315 Md. 510, 519 (1989)).

relitigate these claims.  As noted above, nonmutual collateral estoppel will not apply unless Plaintiff had a "fair opportunity to be heard." *Bryan*, 205 Md.App. at 592.  Indeed, "[t]he foundation of the rule of nonmutual collateral estoppel is that the party to be bound must have had a full and fair opportunity to litigate the issues in question." *Gerber Prods.*, 315 Md. at 518.

Here, Plaintiff has presented no reason to question his ability to be heard and to litigate all of the underlying factual issues during the circuit court's judicial proceedings in the prior litigation.  Plaintiff filed numerous researched briefs with the circuit court in support of his positions.  He was provided a full opportunity to, and did, present arguments before the judge in open court.

In sum, because the requirements of collateral estoppel have been satisfied, the doctrine is applicable here.  Plaintiff has had his day in court, and after he has had this opportunity to be heard, litigation on Plaintiff's fraud, due process, and contract claims regarding the arbitration contract must end.  Therefore, summary judgment in Defendants' favor is appropriate on Counts I through X, XIV, XV, and XVII through XIX.

**B.    Failure to State a Claim**

**1.    Section 1983 Due Process Claims**

Plaintiff asserts two claims against Mr. Goldberg alleging violations of his constitutional procedural and substantive due process rights under the Fourteenth Amendment.    Plaintiff alleges his procedural due process rights were violated when Mr. Goldberg refused to record the arbitration proceedings, and that his substantive due process rights were violated by the bias Mr. Goldberg exercised against him.    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution, and must also show that the alleged deprivation was committed by a person acting under color of state law.  *Allen v. Columbia Mall, Inc.*, 47 F.Supp.2d 605, 609 (D.Md. 1999) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Thus "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."    *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Assuming Plaintiff's § 1983 procedural due process claims are not barred by the doctrine of collateral estoppel, they must be dismissed because Goldberg, a private arbitrator, is not a state actor.  *See Singleton v. Pittsburgh Bd. Of Educ.*, No. 11-

1431, 2012 WL 4063174, at *6 (W.D.Pa. Aug. 24, 2012) (concluding that arbitrator is not state actor and dismissing § 1983 due process claims) (citing *Clay v. Nix*, No. 08-1371, 2008 WL 2607769, at *5 (D.S.C. July 1, 2008) (decision by arbitrator does not constitute an action under color of state law; *Weinraub v. Glen Rauch Sec., Inc.*, 399 F.Supp.2d 454, 463 (S.D.N.Y. 2005) (dismissing § 1983 due process claims because arbitrators do not qualify as state actors), *aff'd*, 180 F. App'x 233 (2[d] Cir. 2006)).

Plaintiff's § 1983 claims must also be dismissed because they fail to raise cognizable federal questions.  Examining a procedural claim, however, requires asking "what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).  The substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

Assuming Plaintiff has a property and liberty interest in the outcome of his divorce proceedings, "[p]rocedural due process is simply a guarantee of fair procedures — typically notice and an opportunity to be heard." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008).  Plaintiff was provided notice and an opportunity to be heard both in the arbitration proceeding and at the Circuit Court.  Plaintiff

18

availed himself of those opportunities, so notice was clearly adequate.   Neither did Plaintiff receive a constitutionally deficient opportunity to be heard.

Three factors are considered when assessing the adequacy of a state's procedures:   (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Edlridge*, 424 U.S. 319, 335 (1976).   Plaintiff's claim clearly fails at the second factor.   His interests are well protected by the existing process.   Plaintiff presented evidence and arguments at the arbitration proceeding, briefed his arguments and argued them at a lengthy hearing before the Circuit Court judge, and appealed that decision.   Plaintiff has cited no authority to demonstrate that this process is likely to produce an erroneous deprivation of his rights and is thus constitutionally inadequate. Therefore, this claim must be dismissed.

Substantive due process violations "run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally

19

incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation remedies." *Mora*, 519 F.3d at 230 (quotations and citations omitted). Plaintiff's substantive due process claim therefore cannot survive. The alleged injuries suffered are not the type that cannot be avoided by adequate pre- or post- deprivation remedies. Indeed, Plaintiff raised in the Circuit Court arguments that he now raises here. Therefore, his substantive claim fails for the same reason his procedural one did: "Maryland's treatment of him is hardly arbitrary when the state has given him the means to correct the errors he alleges." *Id.* at 231.

With respect to both his procedural and substantive due process claims brought through 42 U.S.C. § 1983, Plaintiff has failed to state a claim upon which relief may be granted. Counts XVIII and XIX will therefore be dismissed.

### 2.   Intentional Torts

In Counts XI and XII, Plaintiff asserts claims of "intentional tort" against Mr. Goldberg. Plaintiff concedes that Maryland law does not recognize a "generic" intentional tort. He instead asks this court to establish a new "jurisdictional trespass" cause of action. This request lacks any support in authority. "A federal court sitting in diversity simply cannot compel a state to provide a cause of action in

tort." *Guy v. Travenol Labs., Inc.*, 812 F.2d 911, 915 (4th Cir. 1987); *see also Spencer v. Roche*, 659 F.3d 142, 151 n. 6 (1st Cir. 2011) (noting that it is inappropriate for a federal court "to create new causes of action under state law") (internal citations and quotation marks omitted); *Rice v. Paladin Enters., Inc.*, 940 F.Supp. 836, 842 (D.Md. 1996) ("A federal court sitting in diversity cannot create new causes of action.") (citations omitted) *rev'd on other grounds*, 128 F.3d 233 (4th Cir. 1997). Accordingly, Counts XI and XII are subject to dismissal.

### 3. Abuse of Process

In Count XIII, Plaintiff contends that Mr. Goldberg abused civil process by submitting the arbitration award that the circuit court later entered *via* order on October 9, 2009. Mr. Goldberg contends that he did not issue any process, and that the process that issued did not give rise to a claim for abuse of process.

Under Maryland law, an action for abuse of process provides a remedy "for those cases 'in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.'" *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 38 (1997) (quoting W. Keeton, *Prosser & Keeton on the Law of Torts*

§ 121, at 897 (5th ed. 1984)).  To state a claim for abuse of civil process, the plaintiff must set forth facts which, if proven, would establish:

> [F]irst, that the defendant willfully used process after it has issued in a manner not contemplated by law, *Keys* [*v. Chrysler Credit Corp.*, 303 Md. 397, 411 (1985)]; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process, *Berman* [*v. Karvounis*, 308 Md. 259, 262 (1987)].

*Id.*  "[T]here is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort."  *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 512 (1984) (quoting Prosser, *supra*, at 857).  If a party invoking civil or criminal process is "content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive."  *Id.*  "But the moment he attempts to attain some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated."  *Id.* at 512-13.

The proper analysis of an abuse of process claim, therefore, involves a comparison between the lawful purpose for which the process in question was intended and the improper purpose for which it was actually employed.  "The improper

purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club." *Wood*, 47 Md.App. at 706-07 (quoting Prosser, *supra*, at 857).

Given these parameters, Plaintiff's abuse of process claim cannot be maintained. Here, Mr. Goldberg issued the arbitration award that the circuit court later entered. Plaintiff contracted with Mr. Goldberg to act as the arbitrator for his divorce proceedings. The issuing of an arbitration award was clearly contemplated by the contract, and Plaintiff has not alleged any facts to support the conclusion that issuing the arbitration award was coercive or extortive in nature. Accordingly, dismissal of Count XIII is appropriate.

**4.   IIED**

In Count XVI, Plaintiff alleges that Mr. Goldberg took advantage of his position of power to damage Plaintiff's emotional well-being. The tort of intentional infliction of emotional distress was first recognized by the Court of Appeals of Maryland in *Harris v. Jones*, 281 Md. 560 (1977). To recover for such a claim, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4)

23

the emotional distress is severe. *Id.* at 566. "Each of these elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; [s]he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (1989). This tort is "rarely viable" and "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Respess v. Travelers Cas. & Sur. Co. of America*, 770 F.Supp.2d 751, 757 (D.Md. 2011) (quoting *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009)).

Mr. Goldberg counters that Plaintiff does not allege any facts that meet the "extreme or outrageous" element. Plaintiff argues that Mr. Goldberg took advantage of his position of power, and his acts therefore rise to the level of outrageousness to meet his pleading requirement.

To satisfy the second element, the conduct in question must "completely violate human dignity," and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D.Md. 2008) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 59-60 (1986)); *see also Kohler v. Shenasky*, 914 F.Supp. 1206, 1212 (D.Md. 1995) ("For conduct to be 'extreme and outrageous,' it must go beyond all possible bounds of decency,

and . . . be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotations omitted). "The mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 672 (1992).

In evaluating whether the identified conduct is extreme and outrageous, courts should consider multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and her susceptibility to emotional distress, and the relationship between the defendant and plaintiff. *See, e.g., Moniodis v. Cook*, 64 Md.App. 1, 17, *cert. denied*, 304 Md. 631 (1985). "[T]he extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests." *Harris*, 281 Md. at 569 (citing Restatement (Second) of Torts § 46 comment e (1965)). Furthermore, "[i]n cases where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his conduct will be carefully scrutinized by the courts." *Id.* at 569 (citing 1 F. Harper & F. James, Jr., The Law of Torts § 9.1 at 666-67 (1956); W. Prosser, Handbook of the Law of Torts § 12 at 56 (4th ed. 1971)); *see also Figueiredo-Torres v. Nickel*, 321 Md. 642, 654 (1991)

(recognizing that a psychologist is in a unique position to influence a patient's emotional well-being and their conduct must be closely scrutinized); *Kentucky Fried Chicken Nat'l Mgmt.*, 326 Md. at 677 (recognizing that the employer/employee relationship may be significant factor in determining whether there is liability for tort of IIED). Where reasonable jurors may differ as to whether the defendant's conduct may be regarded as extreme and outrageous, the question should be submitted to a jury. *Harris*, 218 Md. at 569; *Jackson v. Kimel*, 992 F.2d 1318, 1324-25 (4th Cir. 1993). Thus, at the pleading stage, a plaintiff need only allege conduct that a reasonable juror might deem extreme or outrageous.

Here, no reasonable juror would find Mr. Goldberg's conduct outrageous. He conducted an arbitration proceeding for which he was contracted to serve as arbitrator. That proceeding resolved in favor of Plaintiff's wife. Notwithstanding Mr. Goldberg's position of power with respect to Plaintiff, that conduct does not rise to the level of extreme or outrageous to sustain an IIED claim. Therefore, count XVI will be dismissed.

### 5.   Fraud Count against Defendant Skok

Ms. Skok contends that Plaintiff cannot maintain his fraud claim against her. In Maryland, the elements of fraud are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the

> defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002).

The allegations do not support a claim of fraud. Specifically, Plaintiff's claim lacks any allegation concerning reliance. The record shows that Plaintiff protested Ms. Skok's testimony at every opportunity. Indeed, Mr. Goldberg agreed with some of Plaintiff's arguments and consequently reduced the award for attorney's fees in the arbitration award. (ECF No. 5-4, at 22). Because Plaintiff did not rely on Ms. Skok's testimony, he cannot maintain a claim of fraud against her. *See Sass v. Andrew*, 152 Md.App. 406, 441 (2003) (explaining that fraud claims require proof that "the plaintiff relied on the misrepresentation and had the right to rely on it"); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. 10-3517, 2011 WL 3476994, at *19 (D.Md. Aug. 8, 2011) (applying Maryland law and concluding that the plaintiff could not establish reliance element of fraud claim where the plaintiff protested the defendant's actions). Therefore, Count XVII is subject to dismissal.

## IV.  Conclusion

For the foregoing reasons, the motions to dismiss or for summary judgment filed by Defendants Goldberg and Skok will be granted.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge